PONDER, Justice.
 

 The plaintiff, S. W. Murtishaw, doing business as Braswell Company, brought suit against the Glassell-Taylor Company et al. on a' verbal contract, seeking to recover the
 
 *795
 
 sum of $2,773.74, with legal interest from demand, for an alleged balance claimed to be due under the contract. The plaintiff recovered judgment as prayed for, and the defendant has appealed.
 

 Glassell-Taylor Company, Robinson & Young and A. C. Campbell, known as Associated Contractors, entered into a contract with the proper authorities for the construction of the U. S. Reconsignment Depot at Cedar Grove near Shreveport, Louisiana. The Associated Contractors entered into an agreement for the delivery of railroad ballast with the Tri-State Sand & Gravel Company, owned by Glassell-Taylor Company, at price of $1.13 per ton. During the month of June, 1942, certain conditions arose which made it impossible for the Tri-State Sand & Gravel Company to fulfill its part of the agreement. Immediately thereafter, a verbal agreement was entered into between M. L. Mabry, representing the Tri-State Sand & Gravel Company and Glassell-Taylor Company, and the plaintiff, S. W. Murtishaw, whereby the Braswell Company was to deliver railroad ballast directly to the U. S. Reconsignment Depot at Cedar Grove. The price to be paid for the ballast under the verbal contract is disputed and forms the basis of the present suit.
 

 The plaintiff claims that under the verbal agreement Braswell Company was to receive $1.70 per cubic yard on the basis of 2700 pounds. While on the other hand, the defendants claim that the agreed price was $1.70 per cubic yard and not $1.70 per cubic yard on the basis of 2700 pounds. The defendants are willing to pay on the basis of 3,000 pounds per cubic yard. .
 

 There is no contest over the quantity of ballast delivered under the verbal agreement, and it is conceded that the price of $1.70 per cubic yard was to be paid for the ballast. The question in dispute is whether or not it was agreed that the cubic yard of ballast should be calculated on the basis of 2700 pounds.
 

 From the testimony, it appears that the first discussion had with reference to the purchase of the ballast from the plaintiff, which finally lead to the verbal agreement involved herein, was between Mr. J. B. Robinson, the general representative of the defendants, and Mr. S. W. Murtishaw and Mr. J. B. White, representing the plaintiff. Mr. Robinson’s testimony is to> the effect that nothing was said at that time about calculating the cubic yard on the basis of 2700 pounds. He stated that he had nothing to do with the purchase of the gravel except to ascertain where it could be purchased, and he referred the matter to Mr. M. L. Mabry, the person authorized by the defendants to purchase ballast.
 

 The testimony of Mr. Murtishaw merely goes to the effect that he does not remember what was said at the time of the discussion. However, Mr. White, who was present at that time, testified that it was; understood that the price of $1.70 per cubic yard was to be computed on the basis of 2700 pounds.
 

 Miss M. A. Robinson, who was present at the time of the discussion, testified that the price agreed upon was $1.70 per cubic yard. She stated that nothing was said at that time with respect to arriving at the cubic yard on the basis of weight.
 

 
 *797
 
 Subsequently, the verbal agreement for the purchase of the ballast was entered into at Mr. Murtishaw’s office. Mr. Mabry, Mr. Murtishaw, Mr. White and Miss Lillian White were present.
 

 The substance of the testimony of Mr. Murtishaw, Mr. White and Miss White is to the effect that the parties agreed on a price of $1.70 per cubic yard based on the weight of 2700 pounds. These witnesses testified that Mr. Mabry was shown the Mississippi Laboratory tests where similar matter used in previous contracts weighed 2595 pounds per cubic yard. They stated that the parties agreed that the cubic yard was to be determined on the basis of 2700 pounds in order to eliminate the necessity of weighing or measuring each and every cubic yard.
 

 Mr. Mabry admitted that there was some discussion, when the contract was made, as to the method of arriving at what constituted a cubic yard. He stated that he agreed that 2700 pounds would represent a cubic yard if the ballast was of that weight, but if the ballast was of a greater weight, the cubic yard would be measured on the increased basis.
 

 The preponderance of the testimony upholds the plaintiff’s contention.
 

 The correspondence introduced in the record shows that immediately after the ■contract was entered into Mr. Mabry wrote Mr. Murtishaw ordering him to begin-shipping the ballast in accordance with their agreement at a price of $1.70 per cubic yard, f. o. b. cars job site, and informing him that Mr. Robinson was authorized to pay the plaintiff for the ballast.-■
 

 The plaintiff began filling the defendants’ orders for the ballast, and upon receipt of the first check, the dispute arose as to the manner of determining the yardage under the verbal agreement.
 

 On July 18, 1942, the plaintiff wrote Mr. Mabry, calling his attention to the fact that all shipments of ballast, under their agreement, were to be based on a cubic yard computed at 2700 pounds, and requesting Mr. Mabry to come to Mr. Murtishaw’s place of business for the purpose of adjusting the matter. This letter was not answered until August 27, 1942 when Mr. Mabry addressed a letter to the plaintiff, stating that the agreement was based on the price of $1.70 per cubic yard. He suggested, in the letter, that 3000 pounds per yard would be a most satisfactory basis for converting tonnage into yards.
 

 Mr. White testified that when the dispute arose he made a trip to Texarkana to see Mr. Mabry. He stated that Mr. Mabry promised to pay the difference due the plaintiff based on 2700 pounds per cubic yard, but Mr. Mabry had never mailed any check to cover the difference.
 

 It does not appear in the record that any of the parties to this contract ever measured the ballast in order to determine the number of cubic yards. It is significant that the defendants did not keep a record of the yardage and undoubtedly relied on determining the yardage by weight. The plaintiff’s contention that the yardage was to be determined by a given or fixed weight is borne out by the facts in this case.
 

 The purport of the verbal contract involved herein necessarily depends -upon
 
 *799
 
 the testimony given on the trial of the cause. The trial court was in a better position to weigh this testimony. We find no manifest error on the part of the trial court in its findings of fact.
 

 For the reasons assigned, the judgment of the trial court is affirmed at appellants’ cost.
 

 ODOM, J., absent.